```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAPT OF PHILADELPHIA, et al.   :   CIVIL ACTION
                                :
          v.                    :
                                :
PHILADELPHIA HOUSING AUTHORITY, :
et al.                          :   NO. 98-4609
```

MEMORANDUM

Bartle, C.J.                                           May 15, 2007

Plaintiff, ADAPT of Philadelphia ("ADAPT"),[1] filed suit against defendants, the Philadelphia Housing Authority ("PHA") and Carl Greene, Executive Director of PHA, on August 27, 1998. ADAPT alleged violations of § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), for failure of defendants to provide a sufficient number of scattered-site housing units accessible to low income individuals with mobility impairments. See 29 U.S.C. § 794, 24 C.F.R. §§ 8.22 and 8.23.

This action has a long and contentious history which is recorded elsewhere and will not be repeated here except as necessary. On May 20, 2002, the court approved a Settlement Agreement in which PHA agreed to provide over a period of several years certain additional scattered-site housing units accessible to the mobility impaired. Now, before this court, is the motion

---

1. The other plaintiffs in the case were, Liberty Resources, Inc., Marie Watson, Marshall Watson and Diane Hughes. They are not relevant for present purposes.

of ADAPT for attorneys' fees in connection with its enforcement and monitoring of the Settlement Agreement since that date.

I.

On July 26, 2000, after a non-jury trial, we found in favor of ADAPT.  We determined that between 1993 and 1997 PHA was required under the Rehabilitation Act to provide 269 public housing scattered site units[2] accessible for individuals with mobility impairments but that it had only made 21 such units available.  ADAPT of Phila. v. Phila. Hous. Auth., Civ.A. No. 98-4609, 2000 U.S. Dist. LEXIS 11052 at *5 (E.D. Pa. July 26, 2000).  PHA was ordered to provide an additional 248 accessible scattered-site units for occupancy by September 1, 2004.  Id.

While the matter was on appeal, the parties reached a settlement.  By Order dated May 20, 2002 we approved the Settlement Agreement and dismissed the action with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  However, we retained jurisdiction "to enforce the terms of the Settlement Agreement and to adjudicate Plaintiffs' motion for attorney's fees and costs."  ADAPT of Phila. v. Phila. Hous. Auth., Civ.A. No. 98-4609 (E.D. Pa. May 20, 2002); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994).

---

2.  "Scattered site dwelling units are usually located in individual row houses scattered among or surrounded by private homes, although some scattered site units are in houses that are adjacent to other PHA scattered site buildings.  Most of PHA's scattered site houses have only one dwelling unit, while others are divided into two or more different apartments."  ADAPT of Phila. v. Phila. Hous. Auth., Civ.A. No. 98-4609, 2000 U.S. Dist. LEXIS 5380 at *3 (E.D. Pa. April 14, 2000).

The Order also gave ADAPT a sixty day extension of time to file a motion for attorneys' fees and costs.  The parties thereafter stipulated to and the court granted a further extension.  ADAPT made its filing on September 4, 2002.  We denied the motion as moot on January 10, 2003 upon receiving notification that the parties had resolved the issue over ADAPT's attorneys' fees incurred up to May 20, 2002.

The Settlement Agreement set forth a schedule for PHA to make available the 248 accessible public housing units required as a result of our July 26, 2000 Memorandum and Order.  In what the parties deemed as "Phase I," 124 accessible units were to be completed and ready for occupancy no later than December 31, 2003.  Under "Phase II," PHA agreed to meet an occupancy deadline of no later than December 31, 2005 for the remaining 124 units.

From May 20, 2002 to December 31, 2003, the end of Phase I, the parties worked together to implement the Settlement Agreement.  After the Phase I deadline had passed, ADAPT began to suspect that PHA had not met its obligations, and the cooperative nature of the parties' relationship began to deteriorate.

In February 2004 ADAPT wrote to PHA to inquire about the status of the Phase I units.  PHA replied on March 4, 2004 that it was in compliance except for needed "cosmetic changes" to 37 units.  ADAPT visually inspected some of the Phase I units and concluded that a number of them had not been completed or were not otherwise ready for occupancy.  It then requested that PHA

provide the addresses of all 124 Phase I units so that it could determine whether PHA had adhered to the Settlement Agreement. PHA refused.  On April 20, 2004 ADAPT filed a motion to compel, seeking the addresses of the 124 Phase I units.  We granted ADAPT's motion on May 10, 2004.  PHA appealed our decision to our Court of Appeals, which dismissed the appeal for lack of jurisdiction.  <u>ADAPT of Phila. v. Phila. Hous. Auth.</u>, 417 F.3d 390 (3d Cir. 2005).

On June 25, 2004 ADAPT filed its second and third motions to compel.  In its second motion, ADAPT sought the leases for the 124 Phase I units to verify that PHA had leased the units prior to the December 31, 2003 deadline.  ADAPT's third motion to compel sought medical verification forms for occupants of the Phase I units to determine if they in fact needed the accessibility features of the Phase I units.  On September 3, 2004 we granted ADAPT's second and third motions to compel. <u>ADAPT of Phila. v. Phila. Hous. Auth.</u>, Civ.A. No. 98-4609, 2004 U.S. Dist. LEXIS 19159 (E.D. Pa. Sept. 3, 2004).  PHA again appealed our Order and again the appeal was dismissed for lack of jurisdiction.  <u>ADAPT of Phila.</u>, 417 F.3d at 392.

While ADAPT's second and third motions to compel were pending, it concluded that PHA had not complied with the Phase I deadline.  On July 6, 2004 ADAPT filed a motion to enforce the Settlement Agreement, which the court had approved on May 20, 2002.  It sought declaratory and injunctive relief.  ADAPT maintained that PHA failed to meet the Phase I deadline and that

the residents in 36 of the accessible units were not eligible to occupy them.  On July 20, 2004 PHA filed its own motion to enforce the Settlement Agreement, or, in the alternative, to vacate the Settlement Agreement.

In June 2005, this court held a seven day evidentiary hearing regarding the motions.  From the time ADAPT filed its motion to enforce until the evidentiary hearing, the parties conducted discovery and engaged in extensive motion practice.  On August 29, 2005, we denied both motions to enforce the Settlement Agreement and PHA's alternative motion to vacate.  We held that PHA did not violate the Settlement Agreement when it leased units to 36 residents that ADAPT challenged as ineligible for mobility impaired housing.  We stated:

> While the efforts, procedures, and oversight of PHA and its leasing agents have not always been optimal and their record keeping has often been inadequate, we find and conclude that plaintiffs have not proven that any of the occupants of the 36 units has been placed there in violation of the Settlement Agreement....Each person residing in the units in issue has a disability or disabilities which "require the accessibility features of the particular unit" in which he or she is living.

ADAPT of Phila. v. Phila. Hous. Auth., Civ.A. No. 98-4609, 2005 U.S. Dist. LEXIS 25785 at *66 (E.D. Pa. Aug. 29, 2005).

With regard to ADAPT's allegation that PHA failed to comply with the Phase I deadline, we concluded:

> We find that PHA violated the December 31, 2003 deadline for not having all 149 of the settlement units "ready for occupancy" by that time.  Nonetheless, the motion to

>     enforce was not filed for many months after
>     the deadline, and it is now almost two years
>     later.  All of these units have long since
>     been available for leasing.  The matter is
>     now moot.  We trust that the next group of
>     scattered site accessible settlement units
>     will actually be made "ready for occupancy"
>     by December 31, 2005 as called for under the
>     Settlement Agreement.  PHA should take
>     whatever steps are necessary to ensure that
>     there are no "cosmetic changes" or other
>     obstacles remaining to be fixed in these
>     units after this upcoming deadline.  If these
>     units are not ready by that date, nothing
>     herein precludes plaintiffs from promptly
>     seeking the aid of the court.

Id. at *69.

Following our August 29, 2005 Memorandum and Order we heard nothing from the parties until May 11, 2006 when counsel for ADAPT wrote a letter to the court stating:  "This letter happily informs the Court that PHA appears to have complied with the December 31, 2005 deadline for construction and occupancy of the required units.  Other than attorney fees for monitoring the court's Order and Settlement Agreement there are no further issues before the Court."  Def.'s Resp. to Pl.'s Mot. for Attorneys' Fees at Ex. A.

It was not until November 21, 2006, over six months after the court received counsel's letter, that ADAPT filed the motion for attorneys' fees that is presently before us.  The motion seeks fees for work performed from May 20, 2002, when this court approved the Settlement Agreement, until June 23, 2006.  ADAPT argues that it is entitled to attorneys' fees for:  (1) enforcement efforts in the amount of $251,046.00; and (2)

monitoring efforts in the amount of $299,240.25.  PHA opposes the motion on a number of grounds.

II.

Under the "American Rule," parties are generally obligated to bear their own attorneys' fees and costs. Buckhannon Bd. & Home Care, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 602 (2001).  However, statutes may, as here, contain fee shifting provisions which allow prevailing parties to recover attorneys' fees and costs.  The Rehabilitation Act reads, "In any action or proceeding to enforce or charge a violation of a provision of this title [29 USCS §§ 790 et seq.], the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee as part of the costs."  29 U.S.C. § 794a(b) (emphasis added).

"[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  Both enforceable judgments on the merits and court-ordered consent decrees "create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees."  Buckhannon, 532 U.S. at 604 (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 498 U.S. 792-93 (1989)).  However, the Supreme Court cautioned in Buckhannon that "[o]ur precedents...counsel against holding that the term

'prevailing party' authorizes an award of attorney's fees <u>without</u> a corresponding alteration in the legal relationships of the parties." Id. at 605 (emphasis in original).

In interpreting <u>Hensley</u> and its progeny, our Court of Appeals has held that, in addition to judgments on the merits and court-ordered consent decrees, a stipulated settlement may confer "prevailing party" status but only if the court order approving the settlement:  "1) contains mandatory language; 2) is entitled 'Order,' 3) bears the signature of the District Court judge, not the parties' counsel; and 4) provides for judicial enforcement." <u>P.N. v. Clementon Bd. of Educ.</u>, 442 F.3d 848, 853 (3d Cir. 2006) (internal citations omitted).

PHA argues that the May 20, 2002 Order approving the parties Settlement Agreement was not a consent decree and therefore that ADAPT was not a "prevailing party."  Our Order stated:

> Pursuant to Rule 41(a)(2), Fed.R.Civ.P., it is ORDERED that this case is DISMISSED WITH PREJUDICE, on the condition that the parties comply with all terms of their Court-approved Settlement Agreement...In accordance with *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375 (1994), the Court retains jurisdiction to enforce the terms of the Settlement Agreement and to adjudicate Plaintiffs' petition for attorneys' fees and costs.  For purposes of determining an award of attorneys' fees and costs, Plaintiffs are prevailing parties....

<u>ADAPT of Phila. v. Phila. Hous. Auth.</u>, Civ.A. No. 98-4609 (E.D. Pa. May 20, 2002).

We believe that the May 20, 2002 Order, however characterized, approving the stipulated settlement satisfies the factors enunciated in P.N. v. Clementon.  It contains mandatory language, it is entitled "Order," it is signed by this court, and it provides for the court to retain jurisdiction to enforce the terms of the Settlement Agreement.  It even explicitly confers prevailing party status on ADAPT.

III.

PHA next argues that ADAPT's motion for attorneys' fees is untimely.  Rule 54 of the Federal Rules of Civil Procedure provides, in part:

> Unless otherwise provided by statute or order of the court, the motion [for attorneys' fees] must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.

Fed. R. Civ. P. 54(d)(2)(B).

Rule 54 permits courts to extend the fourteen day time limit.  It must be read, however, in conjunction with Rule 6, which states:

> Enlargement.  When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit

>     the act to be done where the failure to act
>     was the result of excusable neglect....

Fed. R. Civ. P. 6(b).

Rule 6 mandates different standards depending upon when the moving party requests an extension of time. We may exercise our discretion with or without a motion before the filing deadline has expired. The court may therefore act even if the moving party only requests, without the formality of a motion, the court to do so. If the moving party does not seek an extension until after the time limit has expired, the court may exercise its discretion only if a motion is made and the moving party proves its failure to comply with the applicable deadline was the result of excusable neglect. The Supreme Court in <u>Lujan v. National Wildlife Federation</u>, discussed the importance of the pre-deadline, post-deadline distinction, stating:

>     Rule 6(b) establishes a clear distinction
>     between "requests" and "motions," and the one
>     cannot be converted into the other without
>     violating its provisions.... Rule 6(b)(1)
>     allows a court ("for cause shown" and "in its
>     discretion") to grant a "request" for an
>     extension of time, whether the request is
>     made "with or without motion or notice,"
>     provided the request is made before the time
>     for filing expires. After the time for
>     filing has expired, however, the court (again
>     "for cause shown" and "in its discretion")
>     may extend the time only "upon motion." To
>     treat all postdeadline "requests" as
>     "motions" (if indeed any of them can be
>     treated that way) would eliminate the
>     distinction between predeadline and
>     postdeadline filings that the Rule
>     painstakingly draws. Surely the postdeadline
>     "request," to be even permissibly treated as
>     a "motion," must contain a high degree of
>     formality and precision, putting the opposing

>     party on notice that a motion is at issue and
>     that he therefore ought to respond.

497 U.S. 871, 896, n.5 (1990).

With regard to ADAPT's motion for enforcement fees, PHA argues that the clock began to run under Rule 54(d)(2)(B) on August 29, 2005 when we denied ADAPT's motion to enforce the Settlement Agreement.  Thus, according to PHA, ADAPT's motion in this regard had to be filed by September 12, 2005.  We agree.

Rule 54 states, "'Judgment' as used in these rules includes a decree and any order from which an appeal lies.  A judgment shall not contain a recital of pleadings, the report of a master or the record of prior proceedings."  Fed. R. Civ. P. 54(a).  Assuming ADAPT was entitled to attorneys' fees for its unsuccessful enforcement efforts, a dubious proposition at best, it had fourteen days from the entry of our August 29, 2005 Order to file a motion for attorneys' fees related to enforcement.

Unlike our May 20, 2002 Order approving the Settlement Agreement, the August 29, 2005 Order did not provide for an extension of time.  Again, unlike what happened in 2002, the parties never stipulated to and ADAPT never sought an extension within the fourteen day time limit or at any point thereafter.  ADAPT simply filed its motion for enforcement fees over a year later on November 21, 2006.  ADAPT's motion for enforcement fees is therefore out of time.

We now turn to ADAPT's motion as it relates to monitoring fees.  ADAPT claims that it is entitled to monitoring

fees for time spent on the three motions to compel discovery and its other efforts to determine whether PHA was complying with the Settlement Agreement to make available the scattered-site housing units for the mobility impaired over the required three year period.  We must start again by determining when the Rule 54(d)(2)(B) clock began to run.  PHA argues that ADAPT was required to file its motion for monitoring fees by May 25, 2006, fourteen days after ADAPT informed the court by letter that PHA complied with the Phase II deadline.  ADAPT counters that its motion is timely because monitoring activities do not necessarily lead to a "judgment" that triggers the start of the fourteen day time limit.  Therefore, according to ADAPT, the fourteen day filing period is not mandatory so long as the opposing party has notice of its intention to seek attorneys' fees.

Assuming for now that ADAPT would be entitled to fees for monitoring, we agree that the fourteen day clock did not begin to run when this court approved the Settlement Agreement on May 20, 2002.  Prevailing parties' motions for post-judgment monitoring fees have been explicitly approved by the Supreme Court.  In <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, the Supreme Court held that attorneys' monitoring efforts can be "as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom...."  478 U.S. 546, 558 (1986).  Such efforts can play a vital role in assuring compliance with court-ordered consent decrees.  <u>See, e.g.</u>, <u>Martin v. Hadix</u>, 527 U.S. 343 (1999);

<u>Alderman v. Pennhurst State Sch. and Hosp.</u>, 725 F. Supp. 861 (E.D. Pa. 1989).

Post-judgment monitoring often is a lengthy and arduous task. At any given time the effort expended by the attorneys to assure compliance can rival that leading up to a settlement. It would be an unwise use of the attorneys' resources and a drain on judicial economy to require parties to file motions for attorneys' fees after every step in the monitoring process.

On May 11, 2006, ADAPT wrote to the court that its monitoring activity was at an end since PHA was in compliance with the Settlement Agreement's Phase II deadline. Accordingly, the Rule 54(d)(2)(B) time limit was triggered at least by that date. Unfortunately, ADAPT did not request in its letter, or otherwise, additional time in which to file a motion for attorneys' fees. Again this is in contrast to what occurred with respect to ADAPT's claim for attorneys' fees incurred up to May 20, 2002. At that time it sought an extension to file its motion, and we granted the additional time not only in our Order of May 20, 2002 but in a subsequent Order as well.

ADAPT argues that its motion for attorneys' fees complies with the "spirit" of Rule 54 and that the fourteen day time limit should not be mandatory because PHA had notice through ADAPT's May 11, 2006 letter to the court that it intended to seek attorneys' fees. Furthermore, ADAPT has submitted affidavits from its attorneys that outline its efforts to resolve the issue of attorneys' fees privately without involving the court.

Nonetheless, as far as the record before us is concerned, PHA never agreed to refrain from opposing as untimely a belated motion for attorneys' fees if negotiations broke down.

We acknowledge that notice to the opposing party is one concern that Rule 54 was designed to address.  The Advisory Committee note to the 1993 Amendment adding the fourteen day deadline states:  "One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed ...."  Notice, however, is not the only concern expressed in the Advisory Committee note, which goes on to say, "Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind."

Even if PHA had ample notice of ADAPT's intention to file a motion for attorneys' fees, ADAPT's six month delay in actually filing its motion undermines the interest in resolving these disputes while the services are "freshly in mind." Particularly in a case such as this, where the motion seeks attorneys' fees for enforcement and monitoring efforts going back four years, adjudicating fees in a timely fashion is important. Significant efforts would be involved here to separate ADAPT's claims for enforcement fees from its claims for monitoring fees—an endeavor that is more easily done when there is compliance with Rule 54.

Finally, ADAPT's assertion that the fourteen day time limit in Rule 54(d)(2)(B) is not mandatory when the opposing

party is given notice of its intention to seek attorneys' fees is unsupported by case law.  In Schering Corp. v. Amgen, Inc., cited by ADAPT, the court held that Rule 54 (d)(2)(B) was not mandatory where the court had previously denied the defendant's motion for attorneys' fees "with leave to renew at the conclusion of Schering's currently contemplated appeal."  Civ.A. No. 96-587, 2001 U.S. Dist. LEXIS 4127 at *4 (D. Del. Jan. 10, 2001).  Rule 54 states, "[u]nless otherwise provided by statute or order of the court, the motion [for attorneys' fees] must be filed no later than 14 days after entry of judgment."  Rule 54(d)(2)(B) (emphasis added).  The rule explicitly allows courts to extend the fourteen day time limit, which the court in Schering chose to do.  At no time, however, were we asked to extend the time, and thus, we have never done so.  Accordingly, ADAPT's motion for monitoring fees also comes too late.[3]

---

3. As a result, we do not reach the question whether ADAPT would have been entitled to monitoring fees had its motion been timely.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAPT OF PHILADELPHIA, et al.   :    CIVIL ACTION
                                :
              v.                :
                                :
PHILADELPHIA HOUSING AUTHORITY, :
et al.                          :    NO. 98-4609
```

ORDER

AND NOW, on this 15th day of May, 2007, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of plaintiff, ADAPT of Philadelphia, for attorneys' fees is DENIED.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                  C.J.

-16-